ABRAHAM *v.* BLYTHEVILLE INDUSTRIAL ASSOCIATION.

4-4965

Opinion delivered March 7, 1938.

*Claude F. Cooper* and *T. J. Crowder,* for appellant.
*Harrison, Smith & Taylor,* for appellee.

GRIFFIN SMITH, C. J. A jury in the Mississippi circuit court found by its verdict that appellant had signed a written agreement to pay $500 to the Industrial Committee of the Blytheville Chamber of Commerce, and the court rendered judgment thereon.

In addition to the formal grounds ordinarily set out in a motion for a new trial, appellant insists (1) that the court erred in overruling his motion to transfer to equity; (2) that the court erred in refusing appellant's evidence of other transactions alleged to have been fraudulent, and (3) that it was error to refuse appellant's motion for a directed verdict.

The complaint alleges that on October 29, 1936, appellant, at the solicitation of the Industrial Committee, signed a card upon which the following was printed and written:

"For the purpose of securing the location in the city of Blytheville of a Rice-Stix factory, I herewith donate to the Industrial Committee of the Chamber of Commerce $500. The said Industrial Committee . . . is to be the exclusive judge of the terms and conditions upon which the said Rice-Stix shall locate in Blytheville, and I hereby affirm and ratify any action taken or to be taken by said Industrial Committee in securing the said location of . . . the factory . . . In the event that said Rice-Stix does not accept the proposition of said Industrial Committee, said donations are to be refunded to the donors."

In his answer appellant denied that he entered into the contract, but says that a committee called upon him for the purpose of ascertaining and securing the amount he would be willing to donate for the Rice-Stix factory. A card was presented to him, accompanied by the explanation by committee members that it was "only a

card which would aid them in keeping a list of the ones who had subscribed to said fund, and that they would fill in the amount which he promised to pay." He alleged, further, that he signed the card in blank [other than as to the printing]; that the committee was only authorized to list him for $100, and that he did not know that $500 was being claimed until some time thereafter. There was this additional allegation: "Said amount of $500 on the card which [appellant] signed was wrongfully and fraudulently placed on there after [appellant] signed it, without [appellant's] permission, against his will and consent, and contrary to his statement to said committee, . . . and is therefore void."

Alleging that he had no adequate remedy at law, appellant moved to transfer to equity for the purpose of reformation.

It was alleged in the complaint and shown by proof that appellee is a corporation. The complaint alleged that the pledge contract was assigned to appellee by the Industrial Committee.

J. Mel Brooks, secretary of the Blytheville Chamber of Commerce, testified that he acted as secretary to the Industrial Committee. Early in 1936 negotiations were entered into with the Rice-Stix Company to have a factory located in Blytheville. In September of that year a proposal was submitted to the board of directors of the Chamber of Commerce, and an industrial committee composed of six members was appointed. This committee went to St. Louis and contacted officers of the Rice-Stix Company. As a result of such conferences Rice-Stix agreed to establish in Blytheville a factory to employ about 487 people in the manufacture of shirts, underwear, and other garments. Citizens were to erect a building of 46,000 square feet of floor space, according to plans and specifications to be supplied by Rice-Stix engineers. The building was to be leased to the company for twenty-five years, with option to renew for an additional twenty-five years. Taxes, maintenance, insurance, etc., were to be charges against the Rice-Stix Company.

Following this agreement several mass meetings were held in Blytheville, one being in the auditorium of the city hall.

Early in October a "drive" was launched to raise funds. In December the Industrial Committee and the Rice-Stix Company reached final agreement. Thereafter the committee assigned the pledges to appellee. [Blytheville Industrial Association was chartered as a benevolent corporation while circuit court was in session in Blytheville early in January, 1937.]

W. L. Horner, testifying for appellee, said that he was a member of the committee that waited upon appellant. The item of $500 was written on the card when appellant received it. Appellant remarked that "It [the factory] is a good thing for the town," and said he was glad to help.

"Q. You told him at that time what he was to give —500? A. That was the first thing we told him, we had him down for $500."

Counsel for appellant asked witness if, as a member of the committee, he had also called on George Faught seeking similar subscriptions. Witness replied in the affirmative. In the absence of the jury Horner testified that Faught was asked to donate $700; that Mr. Hubbard, a member of the committee who talked with Faught, was told to take the card to Faught's bookkeeper; that a check for $500 was written and delivered, but that later in the day payment was stopped.

Appellant's counsel undertook to have evidence of the Faught transaction submitted to the jury "for the purpose of impeachment of the witness and for the further purpose to show the general scheme and design of this committee." The court's ruling was: "The answers of the witness do not show any general scheme or design. This line of testimony is competent only for the purpose of impeaching the witness." An exception was saved.

Other members of the committee testified that the item of $500 was on the card when appellee signed it.

B. A. Lynch, called by appellee as a witness in rebuttal, testified that he was president of the Farmers Bank & Trust Company; that he was chairman of the Industrial Committee, and that he was also president of the Blytheville Industrial Association. The committee asked witness to collect the pledged item of $500. When witness requested payment appellant said: "Well, I will pay it, perhaps; but I want to pay it after the first of the year. I have some bills I want to settle at this time." After the first of the year (1937) witness again asked appellant for payment. The latter replied that if he could get his beer garden open he would be glad to pay.

"Q. Did you mention the amount in talking to him about collecting his pledge? A. I don't remember whether I did the first time I called on him or not, but in our later conversation the amount was mentioned. He did not state to me that the committee wrote the wrong amount on his card, or put him down for more than he promised to pay."

Appellant testified that when the committee members stated that they had come for a donation of $500 he told them that he did not have $500 to give them, but that he would give $100. He then said that Mr. Hubbard, a member of the committee, offered to loan him the amount. "The room was crowded and I got excited; I happened to get mad. They handed me the card. On account of the customers I signed it—so I could wait on my customers. I reached for the card and signed it. There was no $500 on it or any amount of figures at all. There was no pencil mark on the card, just print; and I didn't read it at all."

Appellant's first contention is that the judgment should be reversed because the court declined to transfer the cause to equity. This was not error. The complaint alleged a written contract and appellant denied its execution. If the principal sum of $500 had not been written on the card at the time it was signed, and the committee was not authorized to insert the figures, there

was no contract. Appellant undertook to prove an oral agreement for $100. Appellee did. not allege an oral contract.

It has been uniformly held that fraudulent procurement of a contract will avoid it, and that fraud may be shown as a defense at law. Citations to this effect would be cumulative.

It is next urged that error was committed in excluding testimony offered by appellant "for the purpose of impeachment of witnesses and for the further purpose to show the general scheme and design of this committee." The court held that the proffered testimony was competent for purposes of impeachment, but that it could not be used to show a design or scheme by the committee. Appellant excepted generally without offering the testimony for impeachment purposes. We. agree with the trial court that the evidence was not sufficient to show a design, or scheme.

Finally, it is urged that the evidence is not sufficient to show a valid consideration for the pledge; that it is not sufficient to show that a "final, definite, and binding agreement" was entered into with the Rice-Stix Company, and that there is not sufficient proof to show a valid assignment of the pledge.

The rule as to consideration is that "The benefits accruing to property owners by virtue of the construction of railroads or railroad stations, public buildings, military headquarters, or manufacturing plants or other private buildings, constitute a valuable consideration for their contracts with reference thereto."

Appellant was engaged in the mercantile business in Blytheville. His prosperity, to some extent, depended upon purchasing power of the residents of the community. A factory employing a substantial number of people would necessarily contribute to the economic stability of Blytheville and its business institutions. Therefore, there was consideration for appellant's signature.

*Cartwright* v. *Dennis,* 163 Ark. 503, 260 S. W. 424, is cited by appellant as authority for his contention that

pledges of the character received by appellee are not assignable.

In the Cartwright case it was insisted that the plaintiffs had no such interest in the litigation as to enable them to maintain a suit on a subscription of $250 made by the defendant. Complaint was filed by Sam Dennis and others, "acting for the Valley Springs Academy, of Valley Springs, Arkansas." The defendant resisted payment on the ground that he made his subscription upon the representation that it was proposed to build a college, whereas the promoters of the enterprise did not intend to erect a college, and had not done so, but had only promoted an academy doing four years of high school work. In the opinion it was said: "It does not appear from the complaint just what interest the plaintiffs had in the cause of action, except the recital in the caption, and the complaint was demurrable on that account. In the absence of some allegation that the plaintiffs had a recoverable interest in the subject-matter, they had no right to sue."

In the instant case the situation is different. The complaint alleges an assignment, and that "Appellee Industrial Association was organized to more effectively carry out the agreements and purposes of said committee." It is also alleged that "a written agreement was executed by and between Rice-Stix Dry Goods Company and this plaintiff, setting out in detail the oral agreement previously entered into between the Rice-Stix Dry Goods Company and Industrial Committee for the location in Blytheville of a Rice-Stix factory."

While exhibits referred to in the complaint are not filed, yet the character of questions propounded to witnesses shows that all parties to the suit recognized that the Industrial Committee was acting for the community, and that appellee was incorporated for the purpose of establishing a legal entity with which to contract. Counsel for appellant, in examining appellant, asked this question: "Did a committee of the Blytheville Industrial Association or some association call upon you for a donation?"

The defense now urged as to nonassignability of the pledge and absence of substantial testimony to show that purposes of the pledge had been, or would be served, were not advanced during the trial. Therefore, it cannot be considered.

Only general objections were made by appellant to certain instructions which he now says were erroneous. The motion for a new trial does not set out the alleged errors.

Our conclusion is that the cause was cognizable at law; that the court's action in excluding the questioned testimony was correct; that there was substantial evidence to support the verdict, and that the judgment should be affirmed. It is so ordered.